UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 16-44-DCR-1 |
| V. | ) ) | |
| LEE FINLEY JOHNSON, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Lee Finley Johnson's motion to suppress evidence seized during an April 25, 2016 traffic stop.[1] [Record No. 23] The motion was referred to United States Magistrate Judge Robert E. Wier for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On June 27, 2016, Magistrate Judge Wier conducted an evidentiary hearing. Thereafter, on June 30, 2016, he issued a Recommended Disposition, recommending that this Court deny Johnson's motion. [Record No. 45] Johnson has filed objections to the Recommended Disposition. [Record No. 50] Having reviewed the record along with the Recommended Disposition and Johnson's objections, the Court will deny the motion to suppress.

**I.**

On April 25, 2016, DEA Officers Robert Hart, Jason Moore, and Nolan Bruner met with a Source of Information ("SOI") regarding a drug trafficking complaint in Lexington,

---

[1] Defendant Lillie Johnson joined in Lee Johnson's motion to suppress [Record No. 25] but her motion was denied as moot when she moved for re-arraignment for the purpose of entering a guilty plea. [Record No. 48]

-1-

Kentucky.[2] [Record No. 49, pp. 81–82, 116, 118] The SOI claimed that an individual known as "Libby" was traveling from Arizona to Harlan, Kentucky, and had offered to sell him one pound of methamphetamine. *Id.* at 118. The SOI provided a telephone number for Libby, which the agents confirmed was assigned to Lee Johnson at an address in Arizona. *Id.* at 119. At the agents' request, the SOI placed a call to Libby, but the call was not answered. *Id.* Approximately two minutes later, a person using the subject telephone called back, and the SOI placed the call on speakerphone. *Id.* at 120. The SOI asked the caller if she had "it" with her and inquired as to price. *Id.* at 121. The caller indicated she did not want to discuss the matter over the phone and invited the SOI to meet her at Room 160 of the Howard Johnson motel in Lexington. *See id.* at 121–22. The SOI told the agents that Libby would probably be traveling in a "newer-model white vehicle." *Id.* at 122.

Based on the information provided, agents went to the Howard Johnson motel to investigate. *Id.* When the officers arrived, they noticed a white Nissan Juke parked in close proximity to Room 160. *Id.* at 123-24. Upon checking the license plate, they determined that the vehicle was registered to Lee Johnson in Harlan County, Kentucky. *Id.* Motel employees provided the agents with the driver's license number of the guest who checked into Room 160. *Id.* at 124. Further inquiry revealed that the license belonged to Lillie Johnson of Harlan, Kentucky. *Id.* At that point, the agents decided to contact the individual(s) occupying Room 160. *Id.* Before doing so, however, Officer Hart contacted Lexington Police Department Narcotics Detectives Danny Page and Byron Smoot to provide security backup. *Id.* at 125.

---

[2] Hart is employed as an officer for the Lexington Police Department and as a Task Force Officer for the DEA. [Record No. 49, p. 17] He was working in his capacity as a TFO for the DEA on the date in question. *Id.* at 18.

Detectives Page and Smoot remained in the parking lot in an unmarked police car while the DEA Officers approached Room 160. *Id.* at 126.

As the agents neared Room 160, Moore saw Lillie Johnson through an open window. *Id.* Moore motioned for her to come outside and she complied. The agents introduced themselves and stated that they were performing drug interdiction in high drug trafficking areas. *Id.* at 127. Ms. Johnson identified herself and explained that she was traveling from Arizona to Harlan to help rebuild a residence that had burned. *Id.* She gave the agents permission to enter the room and introduced a male inside as her nephew. The male identified himself as Lee Johnson. *Id.* Agent Moore described Ms. Johnson as pleasant, but extremely nervous. *Id.* at 128. When asked, Ms. Johnson advised that she did not have anything illegal, but she did not know whether her nephew did. *Id.* Agent Moore described Lee Johnson as extremely apprehensive and flustered. *Id.* at 130. He was unable to respond to questions and, when the two stepped outside the room, Moore became concerned that Lee Johnson would attempt to flee. *Id.* at 131.

In the meantime, Detective Hart noticed a suspicious package inside Room 160. The package appeared to be a gift that had been wrapped and re-wrapped. *Id.* at 88. It also had tape that was not characteristic of gift wrapping. *Id.* Agent Hart testified that, in his experience, packages like these are typically designed to conceal items from law enforcement. When Hart advised Ms. Johnson regarding his suspicions about the package, tension in the room grew. *Id.* The agents then asked if they could bring a drug dog into the room, but the Johnsons adamantly denied the request. *Id.* Ms. Johnson allowed the agents to search her vehicle, however. *Id.* at 87. Detective Hart also deployed his drug dog "Bo" to do a free air

sniff on the vehicle. *Id.* at 136. The dog alerted to the presence of a narcotics odor near the driver's side door. *Id.* at 94, 136.

From the parking lot, the officers observed the Johnsons, who had begun loading up their car in preparation to check out of the motel. *Id.* at 137. After the Johnsons completed loading their vehicle, the DEA agents approached them and advised them that if they had anything illegal in their possession, they could leave it in the motel room. *Id.* The Johnsons proceeded to check out of the motel. Agents searched the motel room but located nothing of evidentiary value. *Id.* at 139. After performing the search, Moore felt even more strongly that there were drugs in the car because there was no evidence that anything had been disposed of in the room. *Id.* 141.

Prior to searching the motel room, the DEA officers talked with Detectives Page and Smoot regarding the investigation up to that point. *Id.* at 140. Agent Moore testified that Page and Smoot were present during the discussion of all factors including: "[the] dog hitting on the vehicle; the behavior of Mr. Johnson whenever we discussed with him things outside his motel room; just the fact that everything had added up to where we were confident that there was something illegal in that car." *Id.* Additionally, Page and Smoot had been advised of the nature of the investigation when they initially were asked to provide security detail. Page recalled speaking with the DEA officers following the conclusion of their contact with the Johnsons. He remembered that the other officers believed there were drugs in the room and that Detective Hart had deployed his drug dog on the Johnsons' vehicle. *Id*. at 72.

Page and Smoot decided to follow the Johnsons' vehicle as it exited the motel parking lot. The officers tailed the Johnsons and observed them head toward Winchester, Kentucky. *Id.* at 73. At that point, Page contacted Sergeant Tom Beall of the Winchester Police

Department and explained the following details of the investigation: that a SOI had indicated there was a pound of meth in the motel room at the Howard Johnson; that Officers Hart and Moore had talked to the individuals occupying the room; and that the individuals had left immediately and were en route to Winchester. *Id.* at 74–75. Page advised Beall that there was "probably methamphetamine in the vehicle." *Id*. at 75. Page testified that he did not instruct Beall to pull the vehicle over. Instead, he provided the information so that Beall could make his own decision. *Id.*

Beall testified that Page contacted him on April 25, 2016, stating that he had been "out with the DEA" and was following a Nissan into Clark County that was carrying roughly a pound of methamphetamine. *Id.* at 51. Beall testified that Page asked him to stop the vehicle. *Id.* at 52. Sergeant Riley, assisting Beall in a separate, marked unit, stopped the Johnsons in a parking lot off U.S. 60 in Winchester. *Id.* Beall's basis for stopping the Johnsons was "narcotics coming into Clark County. *Id.* at 53. Beall did not believe he had probable cause to search the vehicle, however, and contacted Detective Hart to request a K-9 unit to perform a free air sniff of the vehicle. *Id.* at 54–55. The dog ("Lux") alerted positively with respect to all four indicators for narcotics odor. *Id.* at 21. Based on the positive alert, Beall, assisted by Page, searched the vehicle. *Id.* Inside, a gift-wrapped box was located and searched. *Id.* Lab testing confirmed officers' suspicions that the box contained a large amount of crystal meth. *Id.* Other smaller amounts of methamphetamine were located in Ms. Johnson's purse and in a men's shaving kit. *Id.* at 57.

The defendants moved to suppress the fruits of the search, arguing that Sergeant Beall did not have reasonable suspicion to justify the traffic stop. [Record No. 23-1, p. 6] Further, they argue that the length of the traffic stop was unreasonable. *Id.* The magistrate judge

concluded that these arguments were without merit. To the extent that Defendant Lee Johnson has raised objections, the Court will review the magistrate judge's determinations *de novo*.[3] *See* 28 U.S.C. § 636(b)(1)(B).

## II.

The Fourth Amendment provides protection against not only unreasonable searches, but also unreasonable seizures. *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997). A traffic stop by a police officer is a seizure within the meaning of the Fourth Amendment. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Accordingly, any evidence seized illegally during a stop will not be admitted at trial. *Id.* Under *Terry v. Ohio*, 392 U.S. 1 (1968), police may stop a vehicle based on reasonable suspicion of an ongoing crime. *Id.* at 749–50. Reasonable suspicion is more than an "inchoate or unparticularized suspicion or hunch of criminal activity." *Id.* at 750 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Rather, it is "specific and articulable facts that would 'warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id.* (quoting *Terry*, 392 U.S. at 21–22).

In determining whether the police had reasonable suspicion to make a traffic stop, the Court looks at the totality of the circumstances. *Smoak v. Hall*, 460 F.3d 768, 778–79 (6th Cir. 2006). An officer's reasonable suspicion need not arise from his own observations—rather, it can be derived from information obtained from other officers. *Id.* at 779. A seizure conducted in reliance on such indirect information does not violate the Fourth Amendment so long as the law enforcement officer who issued the information possessed the necessary reasonable

---

[3] The defendants also argued that narcotics dog deployed during the traffic stop may not have been properly trained. The magistrate judge rejected this argument and Johnson did not object to that portion of the Recommended Disposition.

suspicion. *Id. See also United States v. Duval*, 742 F.3d 246, 253 (6th Cir. 2014) ("collective knowledge doctrine recognizes the practical reality that law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another.") (internal quotation marks and citation omitted).

During the evidentiary hearing, Detective Page testified that he contacted Sergeant Beall and advised him of the investigation at the Howard Johnson. [Record No. 49, p. 74] Page further informed Beall that the Johnsons were en route to Winchester and likely had a pound of methamphetamine in their car. *Id.* at 75. Page stated that he did not direct Beall to pull over the Johnsons' vehicle. *Id.* Beall's testimony was somewhat inconsistent in that he believed Page had instructed him to make the traffic stop. *Id.* at 52. Johnson contends that this discrepancy bars the application of the collective knowledge doctrine, but provides no support for this theory.

Regardless of which officer made the final decision regarding the stop, the decision was based on reasonable suspicion supported by specific, articulable facts. Detective Page was apprised of the nature of the investigation before arriving at the motel to provide back-up assistance. Evidence shows that Page discussed with the DEA officers all of the factors which led to the conclusion that the Johnsons likely had methamphetamine in their vehicle. While Page's testimony regarding that timeframe was not particularly extensive, Sergeant Beall recalled Page advising him that he had been out on an investigation with the DEA and that a white Nissan, likely carrying a pound of meth, would be entering Clark County. As a result, Beall had reasonable suspicion to believe that the Johnsons' vehicle was carrying drugs into Clark County and thus did not violate the Fourth Amendment by stopping the vehicle.

Johnson also contends that the traffic stop was carried out in an unreasonable manner, amounting to an arrest without probable cause. It is well-established that a *Terry* stop must be "reasonably related to the scope of the circumstances which justified the interference in the first place." *United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006) (quoting *Terry*, 392 U.S. at 20). The detention must be "temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* Further, "[t]he investigative means used should also be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time." *Id.*

Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 647–48. Upon stopping the Johnsons, Beall was concerned that he and Sergeant Riley did not have probable cause to search the vehicle. He considered two options: applying for a warrant or requesting a K-9 unit to perform a free air sniff of the vehicle.[4] Reasoning that dispatching a K-9 unit would be much quicker, Beall requested assistance from the Lexington Police Department and Officer Chad Karsner was on the scene with his K-9 within 30 minutes.[5]

---

[4] "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Howard*, 621 F.3d 433, 447 (6th Cir. 2010) (quoting *United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir. 1994)).

[5] Sergeant Beall initiated the stop at 3:59 p.m. [Record No. 49, p. 55] Officer Karsner deployed his K-9 on the Johnsons' vehicle twenty-four minutes later. *See id.* at 22.

Johnson suggests that because law enforcement had already been in contact with the pair at the motel earlier in the day, the traffic stop was unreasonably lengthy. [Record No. 50, p. 4] Indeed, a traffic stop should be prolonged no more than necessary to carry out its purpose. But there is no bright-line rule for determining whether the length of an investigative detention is reasonable. *United States v. Place*, 462 U.S. 696, 709–10 (1983). The Court must consider whether the police diligently pursued the investigation and, therefore, acted reasonably under the circumstances. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Here, it is clear that the officers pursued the investigation diligently. It appears that efforts were made to request the drug dog before the Johnsons were ever detained. [Record No. 49, p. 18] Officer Karsner obviously acted swiftly, as he was on the scene and performing the K-9 investigation in fewer than thirty minutes. Under these circumstances, the period of detention was necessary for the officers to investigate what the reasonably believed was possible criminal activity.

### III.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 45] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant Lee Finley Johnson's motion to suppress [Record No. 23] is **DENIED**.

This 5th day of August, 2016.



Signed By:
*Danny C. Reeves* DCR
United States District Judge